**NOT FOR PUBLICATION**

| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | | |
| In Re: | Case No.: | 23-10694-ABA |
| Rosalyn Napier-Lopez | Chapter: | 13 |
| Debtor. | Judge: | Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

## I.    INTRODUCTION

This matter comes before the court by the motion of Isabel Balboa, the standing Chapter 13 trustee ("Standing Trustee"), joined by Roberts Mill Apartments, the lessor and a creditor of the debtor, Roslyn Napier-Lopez, requesting an order dismissing Ms. Napier-Lopez's current case for not having been filed in good faith and imposing a 180-day bar (the "Dismissal Motion"). After a plenary hearing, at which time all the parties appeared and Ms. Napier-Lopez testified, and based upon the entire record, including the history of Ms. Napier-Lopez's multiple bankruptcy cases, her threadbare petition and woefully deficient schedules and inadequate disclosures in this case, and lack of credibility, the court grants the Standing Trustee's motion.

## II.    JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The record is closed. The following constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## III.    NECESSARY BACKGROUND AND CASE HISTORY

At the outset, the court mentions that throughout all of her cases before the court, it has become familiar with Ms. Napier-Lopez. It has had numerous opportunities to observe her in person and over the telephone. The court has examined her, questioned her, listened to her, observed her demeanor and interactions, and has had ample opportunity to judge her credibility. The court has reviewed its dockets to confirm its understanding. The court does not make its findings blindly or its discussion casually.

### A.  Overview and Purpose of a Chapter 13 Case

To start with, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)). Indeed,

> Limiting relief to the "honest but unfortunate debtor" is so enshrined in the Bankruptcy Code that Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") when a perceived increase in serial and abusive filings seemingly threatened that foundation. . . . In sum, Congress made manifest its intent to curtail abusive filings and limit bankruptcy relief to the "honest but unfortunate debtor."

*In re Reppert*, 643 B.R. 828, 840 (Bankr. W.D. Pa. 2022). "Inherent in the concept of the 'honest debtor' are the attributes of '[g]ood faith and candor,' which 'are necessary prerequisites' to ***any*** bankruptcy filing." *In re Campbell*, 634 B.R. 647, 653 (Bankr. D.D.C. 2021) (emphasis added) (quoting *In re Zick*, 931 F.2d 1124, 1129-30 (6th Cir. 1991)).

To that end, filing a bankruptcy petition is a significant endeavor, as a bankruptcy case is a serious proceeding that has pronounced legal effects on debtors and creditors alike. By filing a bankruptcy petition and seeking safe harbor among the provisions of the Bankruptcy Code, a debtor gains access to a number of powerful protections unavailable outside of bankruptcy. Chief among these protections is the automatic stay. *See* 11 U.S.C. § 362(a). The moment a case is filed, the automatic stay leaps into effect by operation of law and provides fundamental protection to debtors from actions to collect on prepetition debt. *Id.*; Chapter 13 – Bankruptcy Basics, U.S. COURTS,   https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-13-bankruptcy-basics (last visited May 1, 2023); *see also* 11 U.S.C. § 362(a)(1), (6). "The filing of the bankruptcy case acts to give debtors, including debtors in chapter 13 cases, a breathing spell from creditors. . . . By halting litigation against the debtor, the [automatic] stay gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Morrow*, 495 B.R. 378, 386 (Bankr. N.D. Ill. 2013) (quoting *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) (*citing* H.R. Rep. No. 95–595, at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97)) (internal quotation omitted). Likewise, although some exceptions apply, generally "[i]n a Chapter 13 case context, the automatic stay permits the Debtor (lessee) to attempt reorganization, and to assume the lease and cure the default[.]" *In re Lowry*, 25 B.R. 52, 56 (Bankr. E.D. Mo. 1982).

A Chapter 13 bankruptcy case allows individuals with regular income to pay off their debts—in whole, or as is more often the case, in part—over the course of three to five years. 11 U.S.C. §§ 109(e), 1322. Debtors may save their homes by staying foreclosure or eviction proceedings and curing their arrears over the life of their plan. 11 U.S.C. § 1322(b)(3); *see generally* Chapter 13 – Bankruptcy Basics, cited *supra*; 8 Collier on Bankruptcy, ¶ 1300.01 (Matthew Bender 2023). But, only the debtor may propose a Chapter 13 plan, 11 U.S.C. § 1321, and so long as their plan meets the statutory requirements for confirmation set forth in 1322(a), the Code affords debtors significant discretion in choosing how to repay their debts, 11 U.S.C. §

1322(b); 8 Collier on Bankruptcy, ¶ 1300.01. Debtors may choose whether to reject or accept residential leases, they may cure prepetition defaults through their plan, they may exempt assets from the bankruptcy estate, and they may decide whether to fund their plan using future income or from the sale of assets, or both. 11 U.S.C. §§ 522(b), (d); 1322(b)(3), (7), (8). Upon successfully completing a Chapter 13 plan, a debtor is entitled to a discharge, which, with limited exceptions, releases them from personal liability of all debts allowed or provided for by the plan. 11 U.S.C. § 1328(a); Chapter 13 – Bankruptcy Basics, *supra*. Indeed, in the hands of the honest but unfortunate debtor, bankruptcy can be a powerful, transformative tool. In the hands of the dishonest debtor, however, bankruptcy can be a tool for abuse and fraud.

Fortunately, the Bankruptcy Code contains safeguards to prevent abuse, and the Chapter 13 trustee plays a key role. In a Chapter 13 case, an impartial case trustee, like the Standing Trustee here, is appointed to administer the case and represent the interests of the bankruptcy estate. 11 U.S.C. § 1302. The trustee is responsible for accounting for property received from the debtor, investigating the debtor's financial affairs, and examining creditors' claims. 11 U.S.C. §§ 704, 1302(b)(1); *see also* 8 Collier on Bankruptcy, ¶ 1302.03 (describing the duties of the Chapter 13 trustee). Section 521(a)(3) and (4) and Fed. R. Bankr. P. 4002 require debtors to cooperate with and provide documents to a trustee in the performance of their duties. The Chapter 13 trustee also holds a meeting of creditors, at which the trustee places the debtor under oath and both the trustee and creditors may ask the debtor questions. 11 U.S.C. § 341(a). In addition to being required to provide documents for this meeting, the debtor is required to attend this meeting, and must, under oath, answer questions. 11 U.S.C. § 343; Fed. R. Bankr. P. 4002. This meeting is a crucial part of the bankruptcy process, as it allows the parties involved to gain a clear understanding of the debtor's financial affairs. This information may be used, for example, to determine whether there are grounds for dismissal of the case, whether a reorganization is feasible, or whether all of the debtor's assets are accurately reflected in the debtor's schedules. *See, e.g.*, *In re Lopez*, 532 B.R. 140, 146 (Bankr. C.D. Cal. 2015); *In re Johnson*, 291 B.R. 462, 468 (Bankr. D. Minn. 2003); *In re Vilt*, 56 B.R. 723, 725 (Bankr. N.D. Ill. 1986).

While the Bankruptcy Code provides significant protections and rights to a debtor, in exchange for those protections and rights, it also imposes duties and responsibilities on a debtor. These duties and responsibilities serve as further safeguards to prevent abuse. *See generally* 11 U.S.C. § 521. Without question, the necessary prerequisites of good faith and candor, *Zick*, 931 F.2d at 1129–30, are interwoven into the duties and disclosure requirements placed on debtors by the Bankruptcy Code. Key to the bankruptcy process is the duty of a debtor to file **complete and accurate** schedules of assets and liabilities, current income and expenditures, executory contracts and unexpired leases, as well as a Statement of Financial Affairs. *Id.*; Fed. R. Bankr. P. 1007(b)(1); *In re Schapiro*, No. 96-13357DWS, 1997 WL 367201, at *6 n. 24 (Bankr. E.D. Pa. June 6, 1997) ("A debtor's duty to file complete and accurate schedules, *see* 11 U.S.C. § 521, is paramount"); *In re Green*, 141 B.R. 440, 442 (Bankr. M.D. Fla. 1992) (the requirements of § 521(1) are "some of the most important duties of a debtor"; *In re Dreyer*, 127 B.R. 587, 593 (Bankr. N.D. Tex. 1991) ("The bankruptcy system relies on a debtor to deal honestly with his creditors by making *full, complete and honest disclosure* in his statements and schedules.") (emphasis added) (citing *Hudson v. Wylie*, 242 F.2d 435 (9th Cir.), *cert. denied*, 355 U.S. 828 (1957)). A debtor must also provide the Chapter 13 trustee with a copy of their federal income tax return for the most recent tax year ending immediately before the commencement of the case, 11 U.S.C. § 521(e)(2)(A)*. On

the bankruptcy petition itself, a debtor must list *all creditors* with *accurate addresses* and the amounts and nature of their claims—essentially, basic information. Chapter 13 – Bankruptcy Basics, *supra.* The debtor must also disclose the "source, amount, and frequency" of their *income and expenses*, as well as all of their assets and property. *Id.* Taken together, these disclosure requirements serve the important purposes of preventing fraud and abuse and ensuring a proper case administration. The requirement that debtors list their creditors, for instance, prevents debtors from evading creditors, thus ensuring that they are treated fairly. The requirement that a debtor disclose their assets, income, and property prevents a debtor from concealing assets from creditors, and in turn facilitates a fair distribution of those assets in accordance with the intent and purposes of Chapter 13 and the Bankruptcy Code. *See, e.g.*, *In re Bossart*, 05-34015-H4-7, 2007 WL 4561300, at *16 (Bankr. S.D. Tex. Dec. 21, 2007), *aff'd sub nom*, *Bossart v. Havis*, 389 B.R. 511 (S.D. Tex. 2008), *aff'd sub nom*, *In re Bossart*, 296 Fed. App'x. 398 (5th Cir. 2008). Finally, Chapter 13 debtors must pay filing fees, 28 U.S.C. § 1930; Fed. R. Bankr. P. 1006, and have "an ongoing duty to pay postpetition obligations" like rent, when due. *In re Danastorg*, 382 B.R. 585, 588 (Bankr. D. Mass. 2008)*; see Lamarche v. Miles*, 416 B.R. 53, 58 (E.D.N.Y. 2009) (recognizing "a tenant's obligations to make payments to a landlord where a Chapter 13 petition has been filed") and *In re Watkins*, No. 06-CV-1341 (DGT), 2008 WL 708413, at *4 (E.D.N.Y. Mar. 14, 2008) (stating that, in the context of a Chapter 13 case, "the failure of a tenant to . . . comply with rental obligations constitutes cause to lift the automatic stay under § 362(d)(1).").

By requiring debtors to provide basic, accurate, and complete information to, and cooperate with, the Chapter 13 trustee, these disclosure requirements promote transparency and enable the Chapter 13 trustee and creditors to make informed decisions about how to proceed. *In re Dupal*, 10-62362, 2011 WL 2213975, at *3 (Bankr. N.D. Ohio June 7, 2011) ("Full disclosure allows the trustee and creditors the opportunity to examine and investigate a debtor's financial transactions and pre-bankruptcy dealings to make informed decisions. When debtor is not forthright, the system is denigrated."). Importantly, these disclosure requirements serve as a safeguard that promotes the proper and efficient administration of the bankruptcy estate by enabling the Chapter 13 trustee to conduct their duties, administer the bankruptcy estate, and make distributions to creditors. In exchange, the honest but unfortunate debtor earns the protections and rights afforded by Chapter 13 of the Bankruptcy Code.

As set forth below, Ms. Napier-Lopez does not deserve the protections and rights afforded by Chapter 13 of the Bankruptcy Code.

### B.  Multiple Bankruptcy Filings[1]

#### i.  The 2016 Case

Ms. Napier-Lopez commenced a bankruptcy case on March 22, 2016, by filing an emergency petition,[2] Bankr. No. 16-15387-ABA, Doc. No. 1[3] (the "2016 Case"). She indicated thereon that her lessor had obtained an eviction judgment against her. Doc. 1, p. 3.[4] The lessor confirmed this. Doc. No. 17. Ms. Napier-Lopez also filed at that time a Certificate of Credit Counseling, Doc. No. 5, an Application to Pay Filing Fees in Installments, Doc. No. 7, and an Initial Statement About an Eviction Judgment (Official Form 101A), Doc. No. 9. The list of creditors attached to her petition only disclosed two creditors: her lessor, Charles Kelchner, and First Premier Bank South Dakota—but did not disclose First Premier's address.

Because she did not include with her petition any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, Ms. Napier-Lopez had the duty to file those within 14 days. Fed. R. Bankr. P. 1007(c). She did not. Instead, after that deadline, she filed a motion to extend time to file missing schedules, which was contested. Ultimately, before a hearing on the motion to extend could be heard, she filed her missing schedules, and the court permitted the case to proceed. Doc. No. 22. With her missing schedules, Ms. Napier-Lopez added Midland Funding, LLC as an unsecured creditor, and as the only other creditor in the case. Despite listing it on her

---

[1] The court's records reflect that Ms. Napier-Lopez has filed nine bankruptcy cases since 1999. Without support, Ms. Napier-Lopez declared that any cases filed before 2016 could not be considered because a statute of limitations has run. She also stated that her former spouse, not her, controlled those cases. As such, Ms. Napier-Lopez refused to answer any of the Standing Trustee's questions related to any of those cases. Nevertheless, for purposes of this opinion, the court is only considering her cases filed from 2016 forward, when this judge was on the bench.

[2] An "emergency petition", also known as a "bare-bones petition," is usually a petition (Official Form 101) and list of creditors that is filed without the remaining necessary schedules, statements and other documents required by Fed. R. Bankr. P. 1007. It generally is filed when facing an immediate emergency—such as an eviction or sheriff sale—and is done to stop that process. The schedules, statements, and other documents then are to be filed within 14 days of the filing of the petition. Fed. R. Bankr. P. 1007(c).

[3] In Part B of this opinion, when a "Doc. No." is referred to in a sub-part, it will mean the docket number of the court's docket in the case being discussed in that sub-part. For example, Doc. No. 1 cited here means Doc. No. 1 in the 2016 Case. When applicable, a cited Doc. No. not in the current sub-part will be cited with the particular case in which it applies.

[4] I may take judicial notice of the docket entries in the 2016 Case or in any of Ms. Napier-Lopez's cases. Fed. R. Evid. 201, incorporated in these proceedings by Fed. R. Bankr. P. 9017. *See In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991). When determining a lack of good faith, it is appropriate to look to the history of the multiple bankruptcy cases filed. *In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014). The court may consider the truth of documents submitted in a previous case when those documents would be admissible under the Federal Rules of Evidence." *In re Bestway Prod., Inc.*, 151 B.R. 530, 541 (Bankr. E.D. Cal. 1993), *aff'd sub nom, In re Wetherbee*, 165 B.R. 339 (B.A.P. 9th Cir. 1994), *aff'd*, 165 B.R. 339 (B.A.P. 9th Cir. 1994); *see also In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir. 1942). A court may look to its own records and the filed documents in the prior cases because "verified Schedules and Statements filed by a debtors [sic] are not just pleadings, motions or exhibits thereto. They are evidentiary admissions. *In re Cobb*, 56 B.R. 440, 442 n. 3 (Bankr. N.D. Ill. 1985). *See*, Fed. R. Evid. 801(d)(2) (Admission by a party opponent not hearsay)." *In re Earl*, 140 B.R. 728, 731 n.2 (Bankr. N.D. Ind. 1992).

list of creditors filed with her emergency petition, Ms. Napier-Lopez did not list First Premier Bank South Dakota on her schedules as a creditor in the case (although she did include that entity in determining deductions for debt payment on her Chapter 13 Calculation of Your Disposable Income. Doc. No. 22, p. 38). Ms. Napier-Lopez never made any further amendments to her petition or schedules.

On her Initial Statement About an Eviction Judgment, signed as certified under penalty of perjury, Ms. Napier-Lopez stated that her lessor, Mr. Kelchner, obtained a judgment for possession against her and that, as required, she had given the bankruptcy court clerk a deposit for the rent that would be due during the 30 days after the filing of the petition. *See* 11 U.S.C. § 362(l)(1)(B). This proved to be false, as the clerk docketed a *Clerk's Notice of Service of Certified Copy of Docket Report pursuant to 11 U.S.C. section 362(l)(4)(B)* stating that *"The debtor has not complied with the certification requirement(s) of 11 U.S.C. section 362(l)(1). The exception to the automatic stay pursuant to 11 U.S.C. section 362(b)(22) applies."* Doc. No. 10. With Ms. Napier-Lopez having failed to comply with her duties as a debtor, specifically with the requirements of Form 101A and relevant statutes, the lessor was free to proceed with his eviction action.[5]

Ms. Napier-Lopez was very contentious and argumentative in her case. Without support, she made serious allegations about her lessor, seeking to reimpose the stay against him and also to have the court consider sanctions against him for allegedly violating the stay. Doc. Nos. 20, 34. Despite her failing to comply with the basic motion standards even minimally, as a courtesy the court scheduled the matters with return dates so that Ms. Napier-Lopez could be heard. As to reimposition of the stay, the court asked Ms. Napier-Lopez whether she believed that she had the right under state law to set aside the eviction judgment as she had certified on Form 101A. Audio of 05/04/2016 hearing, Doc. No. 47, at 10:16 a.m. Ms. Napier-Lopez acknowledged that she did not have the right to do so, contradicting her previous sworn statement, and clarified that she was seeking relief exclusively under bankruptcy law. *Id.* As to the sanctions motion, Ms. Napier-Lopez failed to appear to prosecute it and thus failed to meet her burden. Having produced no evidence or legal support warranting the relief requested, both motions were denied. Doc. Nos. 42 and 49.

Other relevant facts about the 2016 Case: Ms. Napier-Lopez properly listed her lessor on Schedule G, which requires the disclosure of unexpired leases, Doc. No. 22, but made no

---

[5] While most debtors may cure prepetition defaults under residential leases through their plan, the situation is different when the lessor has obtained a judgment for eviction—like here. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). But section 362(b)(22) creates an exception for the continuation of an eviction, unlawful detainer action, or similar proceeding involving residential property in which the debtor resides as a tenant under a lease or rental agreement if the lessor has obtained a judgment for possession of such property against the debtor before the commencement of the bankruptcy case. 11 U.S.C. § 362(b)(22). But even this section has an exception, at section 362(l), which requires that the debtor file with the petition and serve on the lessor a certification under penalty of perjury that (1) circumstances exist in which the debtor would be permitted under applicable nonbankruptcy law to cure the entire monetary default that gave rise to the judgment for possession, and (2) the debtor, or an adult dependent of the debtor, has deposited with the clerk of the bankruptcy court any rent that would become due during the 30-day period after the filing of the petition. 11 U.S.C. § 362(l)(1)(A) and (B). In other words, Official Form 101A. Official Form 101A is part of the Official Forms package and can be easily obtained by a debtor, as demonstrated here by Ms. Napier-Lopez's use of it. Doc. No. 9. To be sure, compliance with Official Form 101A is the *only* way a debtor who has an eviction judgment against them can retain their residence. They *cannot* use a plan, unless consented to by a lessor, to cure prepetition arrears and remain in possession of the leased property.

postpetition payments to him. The court issued multiple notices regarding her failure to pay fees. Doc. Nos. 23 and 48. Even though it was her duty to do so, her plan provided for no plan payments or length of plan, making it patently unconfirmable. The plan did not provide for any treatment of unsecured claims. The plan provided for the avoidance of a lien described nowhere in any of her pleadings, Doc. No. 25, Part V. She did not pay filing fees. Ultimately, her case was swiftly dismissed due to her failure to attend the section 341(a) creditors meeting, make all required pre-confirmation payments to the Standing Trustee, and attend her confirmation hearing. Doc. No. 50. No plan was confirmed.

The foregoing, indisputable facts show that Ms. Napier-Lopez filed the 2016 Case as an emergency petition as a direct result of the lessor eviction action. She accused the lessor of serious misdeeds. No postpetition payments were made to the lessor. She did not comply with her duties as a debtor. She lacked candor, as she filed incomplete and inaccurate pleadings and failed to disclose things. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute matters despite given every opportunity to do so. The case was ultimately swiftly dismissed due to her failure to fulfill her duties.

### ii.   The 2019 Case

Ms. Napier-Lopez commenced another bankruptcy case on September 11, 2019, by filing another emergency petition, Bankr. No. 19-27448-ABA, Doc. No. 1 (the "2019 Case"). Despite her 2016 Case, Ms. Napier-Lopez failed to disclose, as required by Part 2, Question 9 of the petition, that she had filed for bankruptcy within the last eight years. Doc. No. 1, p. 3. As in her 2016 Case, she filed an Application to Pay Filing Fees in Installments, Doc. No. 6, and an Initial Statement About an Eviction Judgment (Official Form 101A), Doc. No. 2, at the time of filing her petition, and a Certificate of Credit Counseling the next day, Doc. No. 8. The list of creditors attached to her petition only disclosed three creditors: her lessor (Woodspring Suites), Discover Card Services, and Sallie Mae. As in her previous case, because her emergency petition did not include any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, Ms. Napier-Lopez had the duty to file her missing documents within 14 days. She did not. Instead, she waited nearly a month to do so. *See* Doc. No. 17. Nevertheless, the court permitted the 2019 Case to proceed.

On an Initial Statement About an Eviction Judgment, Ms. Napier-Lopez certified that she had given the bankruptcy court clerk a deposit for the rent that would be due during the 30 days after the filing of the petition and stated that no judgment was obtained. Indeed, the lessor stated that while there was an eviction proceeding pending, it had not yet obtained an eviction judgment. The hearing on the eviction judgment in landlord-tenant court was scheduled for the day after the date of filing. Doc. No. 16-1, ¶ 6. Thus, because there was no judgment for eviction, she did not need to file the Initial Statement About an Eviction Judgment as sections 362(b)(22) and (l) did not apply. However, what is relevant here is that her action triggered the clerk's office to issue a *Clerk's Notice of Service of Certified Copy of Docket Report pursuant to 11 U.S.C. section 362(l)(4)(B)*, stating that "The debtor has not complied with the certification requirement(s) of 11 U.S.C. section 362(l)(1). The exception to the automatic stay pursuant to 11 U.S.C. section

362(b)(22) applies." *See* Doc. No. 10. The docket entries in the 2019 Case reflect that no deposit was made. Accordingly, the *Notice* was issued because no deposit was made, contrary to Ms. Napier-Lopez's sworn statement. This is another example of Ms. Napier-Lopez's inaccurate disclosures and careless disregard, or reckless use, of the bankruptcy forms and system.

As to the remaining schedules that she ultimately filed, Ms. Napier-Lopez's disclosures were incomplete, inaccurate, inconsistent, and omitted necessary information. Doc. No. 17. Even though she identified it as a creditor on her list of creditors filed with her emergency petition, Ms. Napier-Lopez did not list the claim held by Sallie Mae anywhere on her schedules. In addition, she failed to provide an address or claim information for Discover Card Services. Doc. No. 16, pp. 16, 18. Worse is that the Claims Register in her 2019 Case reflects that there were at least four other unsecured creditors that she never disclosed on her schedules, nor did she ever file amendments to do so in the 2019 Case.

Ms. Napier-Lopez failed to disclose applicable information and provided inconsistent information between her filed schedules and her Summary of Assets and Liabilities. *Compare* Doc. No. 17, pp. 1–2 *with* pp. 6–10 and 28–32.[6] Importantly, *Schedule I: Your Income* was not fully completed and *Schedule J: Your Expenses*, was completely blank as to what expenses Ms. Napier-Lopez had. These two schedules combined are *fundamental* to a Chapter 13 case as they assist the Standing Trustee, creditors, and the court in determining whether a case or plan is feasible. Her plan, Doc. No. 18, only provided for payment to her lessor but was not feasible on its face due to the information, or the lack of information, provided. Ms. Napier-Lopez never made any further amendments to her petition or schedules.

Almost immediately, Ms. Napier-Lopez's lessor filed for relief from the automatic stay due to nonpayment of rent. Doc. No. 16. Ms. Napier-Lopez asked for an adjournment of that hearing to obtain an attorney. Doc. No. 21. The court accommodated her. Doc. No. 23. On the return date for the hearing on the stay relief motion, Ms. Napier-Lopez requested another adjournment. That request was denied, the matter proceeded, and Ms. Napier-Lopez appeared and testified. She admitted that she had not paid any rent postpetition but claimed that she was withholding rent because she was entitled to offset her rent obligation under state law. Ms. Napier-Lopez's petition or schedules did not reveal any right to set off the lessor's claim, and her testimony was inconsistent with her plan, which provided for payment in full of the lessor's claim. Finding that there was cause for relief pursuant to 11 U.S.C. § 362(d)(1), the court granted the stay relief motion. Doc. Nos. 29, 30.[7]

Thereafter, Ms. Napier-Lopez filed a motion to reinstate the stay. As in her 2016 Case, without relevant support, she levied serious allegations against her lessor including claims of fraud and criminality. In addition, she accused the court of improperly handling the stay relief motion.

---

[6] Ms. Napier-Lopez did complete her summary in her 2016 Case and thus cannot claim ignorance in her failure to do so in the 2019 Case.

[7] As the court explained in its decision, the state court was the appropriate place to litigate state law landlord-tenant disputes. By vacating the stay, the court allowed the parties to continue litigating the matter in state court and raise whatever issues they wished to.

Doc. No. 37. The court never heard the motion to reinstate the stay because the 2019 Case was dismissed upon Ms. Napier-Lopez's failure to pay outstanding fees. Doc. No. 41.

Other relevant facts about the 2019 Case: Ms. Napier-Lopez did not list her lessor on Schedule G which requires the disclosure of unexpired leases. Instead, she checked the box "no" when asked if she had any unexpired leases. No postpetition payments were made to the lessor. The court issued multiple notices due to Ms. Napier-Lopez's failure to pay fees. Doc. Nos. 5, 26, 32. As set forth above, the case was eventually dismissed due to her failure to pay required filing fees. Doc. No. 41. Even though it was her duty to do so, her plan did not provide for any treatment of unsecured claims. Doc. No. 18, Part V. Pursuant to her requests, once on the basis to obtain counsel, Ms. Napier-Lopez's confirmation hearings were repeatedly adjourned as an accommodation, once on the day of the confirmation hearing itself. Doc. Nos. 19, 20, 34, 35. Finally, she failed to attend the section 341(a) meeting and make all required pre-confirmation payments. No plan was confirmed. The case was swiftly dismissed.

The foregoing indisputable facts show that Ms. Napier-Lopez filed the 2019 Case as an emergency petition as a direct result of the lessor eviction action. She accused the lessor of serious misdeeds. No postpetition payments were made to the lessor. She did not comply with her duties as a debtor. She lacked candor, as she filed incomplete and inaccurate pleadings and failed to disclose things. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute matters despite given every opportunity to do so. The case was ultimately swiftly dismissed due to her failure to fulfill her duties.

### iii.    The 2022 Case

Ms. Napier-Lopez commenced another bankruptcy case on June 24, 2022, by filing an emergency petition, Bankr. No. 22-15137-ABA, Doc. No. 1 (the "2022 Case"). She also filed a Certificate of Credit Counseling, Doc. No. 6, and an Application to Pay Filing Fees in Installments, Doc. No. 8, with the petition. As in her previous cases, there was an eviction proceeding pending. Doc. No. 13-1, ¶ 5. As in her previous cases, because her emergency petition did not include any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, Ms. Napier-Lopez had the duty to file them within 14 days. She did not. Instead, once again, she waited nearly a month to do so. Nevertheless, the court permitted the 2022 Case to proceed after she filed the missing documents.

As in her previous cases, Ms. Napier-Lopez again failed to properly disclose on the petition that she had filed for bankruptcy within the last eight years as required by Part 2, Question 9 of the petition. Doc. 1. p. 3. The list of creditors attached to her petition only disclosed two creditors: her lessor (Roberts Mill Apartments) and Capital One. *Id.*, p. 10. As for the remaining schedules ultimately filed, Ms. Napier-Lopez's disclosures were incomplete, inaccurate, inconsistent, and omitted necessary information. Doc. No. 16. Even though she identified it as a creditor on her list of creditors filed with her emergency petition, Ms. Napier-Lopez did not list the claim held by Capital One anywhere on her schedules. In addition, she added Santander Consumer USA as an unsecured creditor and as the only other creditor in the case, however without an address or any

information about the claim. Doc. 16. p. 39. Again, compelling is that the Claims Register in her 2022 Case reflects that there were at least five other unsecured creditors she never disclosed on her schedules nor amended the schedules to disclose.

Ms. Napier-Lopez did not bother to disclose any information on her Summary of Assets and Liabilities. *Compare* Doc. No. 16, pp. 1–2 *with all remaining schedules*. As to the most fundamental documents necessary in a Chapter 13 case, Ms. Napier-Lopez did not bother to disclose any information required on *Schedule I: Your Income* despite apparent sources of income disclosed in other schedules. Doc. No. 16, p. 52. *Schedule J: Your Expenses* was only partially completed. *Id.*, p. 54. Even her amendments to those schedules were not accurate. Doc. No. 38. She also failed to disclose the address where she had lived at the inception of the 2019 Case. Doc. No. 16, p. 4. Her plan, Doc. No. 14, only provided for payment to her lessor and a secured creditor, but on its face it was patently unconfirmable as it proposed to pay over $38,000 in claims with plan payments totaling only $7,200. Doc. 14. pp. 2, 4. Her modified plan, Doc. No. 37, which cut her monthly payments in half, obviously did not cure that defect.

Almost immediately, Ms. Napier-Lopez's lessor filed for relief from the automatic stay for nonpayment. Doc. No. 13. In her opposition, as in her previous cases and without support, Ms. Napier-Lopez leveled serious allegations against her lessor as well as its counsel. Doc. No. 23. The matter was resolved through the entry of an *Order Conditioning Relief From the Automatic Stay*. Doc. No. 28. When she defaulted thereunder, Doc. No. 49, the court entered another *Order Conditioning Relief From the Automatic Stay*, Doc. No. 58, to provide Ms. Napier-Lopez with the opportunity to cure the default.

In addition, Ms. Napier-Lopez's secured creditor with regard to her vehicle filed for relief from the automatic stay. Doc. No. 25. In Ms. Napier-Lopez's opposition she, without support and incorrectly, leveled serious allegations against the creditor and its counsel, accusing it of misconduct as it related to her co-debtor. Doc. No. 35. At the hearing on the matter, Ms. Napier-Lopez acknowledged that there was a co-debtor on the obligation to the creditor, and the court explained that therefore it was proper for the creditor to name the co-debtor in its motion. Doc. No. 46. The hearing on the motion was continued for three months, giving Ms. Napier-Lopez the opportunity to file written opposition and status with support, with the failure to do so resulting in stay relief being granted. *Id.* She filed nothing; accordingly, the court granted stay relief.[8]

Other relevant facts about the 2022 Case: Ms. Napier-Lopez did not list her lessor on Schedule G, which requires the disclosure of unexpired leases; instead, she left that form blank. Doc. No. 16. She stated she had no co-debtors on Schedule H. *Id.* She made no postpetition payments to her lessor. The court issued multiple notices due to Ms. Napier-Lopez's failure to pay fees, Doc. Nos. 7, 19, 31, 50, and the case was eventually dismissed because of her failure to pay filing fees. Doc. No. 62. Even though she had a duty to do so, her initial plan did not provide for any treatment of unsecured claims. Doc. No. 14, Part V. Finally, the court frequently adjourned matters to allow her to address the issues in her case including addressing her desire to retain counsel. *See* 2022 Case Docket.

---

[8] Though the case had been dismissed a few days earlier, Doc. No. 62, the court entered an order granting the motion, Doc. No. 67, in case Ms. Napier-Lopez asked to vacate dismissal. She did not.

Of particular note, the record in the 2022 Case shows that Ms. Napier-Lopez repeatedly failed to perform her duties or abide by agreements. At times, despite contending that she was not, Ms. Napier-Lopez became belligerent with the parties involved as well as with the clerk's office and the court, so much so that the court admonished her for her quarrelsome behavior, conduct, and demands. She also failed to follow proper procedure, filed untimely pleadings, and treated the clerk's office like it was her own personal filing clerk. Doc. No. 40, 46, 57. Despite all this, and in an effort to assist her in prosecuting her case, the court entered an *Order Conditioning Continuation of Case* prepared by the Standing Trustee that set forth a list of items that needed to be completed just to get to a confirmation hearing. Doc. No. 61. In addition, during the 2022 Case, the court entered orders and set procedures to enable Ms. Napier-Lopez to deal with her secured creditors regarding her postpetition defaults. Doc. Nos. 28, 58, 46. Yet, despite asserting in her 2023 Case that she believed her 2022 Case had been three-quarters of the way done,[9] Ms. Napier-Lopez allowed her case to be dismissed over an unpaid $73 filing fee. Doc. Nos. 50, 62; Doc. No. 50 in the 2023 Case.

The foregoing indisputable facts show that Ms. Napier-Lopez filed the 2022 Case as an emergency petition as a direct result of the lessor eviction action. She accused the lessor of serious misdeeds. No postpetition payments were made to the lessor. She did not comply with her duties as a debtor. She lacked candor, as she filed incomplete and inaccurate pleadings and failed to disclose things. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute matters despite given every opportunity to do so. The case was ultimately swiftly dismissed due to her failure to fulfill her duties.

### iv.     The 2023 Case

Ms. Napier-Lopez commenced her most recent bankruptcy case (the fourth before this judge) on January 27, 2023, by filing an emergency petition, Bankr. No. 23-10694-ABA, Doc. No. 1 (the "2023 Case"). Like in her 2019 and 2022 cases, there was an eviction proceeding pending. Doc. No. 34.

Despite her previous cases, Ms. Napier-Lopez again failed to properly disclose that she had filed for bankruptcy within the last eight years as required by Part 2, Question 9 of the petition. Doc. 1, p. 3. As in her past cases, she filed with her petition a Certificate of Credit Counseling, Doc. No. 4, and an Application to Pay Filing Fees in Installments, Doc. No. 7. As to the Certificate of Credit Counseling, she filed the same certificate as filed in the 2022 Case, and thus misrepresented on the petition that she had obtained credit counseling within 180 days prior to her petition. Doc. No. 1, p. 6; *see* Doc. No. 4, and Doc. No. 6 in the 2022 Case. The list of creditors attached to her petition only disclosed two creditors: her lessor (Roberts Mill Apartments) and Capital One.

As in her previous cases, because her emergency petition did not include any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, Ms. Napier-Lopez

---

[9] In reality, this was not because she had completed three-quarters of her plan, but because she had paid three of the four filing fee installments. This does not constitute being three-quarters done with the case.

had the duty to file her missing documents within 14 days. She did not. Instead, once again, she waited nearly a month to do so. Nevertheless, the court permitted the 2023 Case to proceed after she filed the missing documents.

As is the normal course for cases that are filed within one year of each other (the 2022 Case was filed in June 2022 and this case in January 2023), the Standing Trustee alerted the court to the fact that Ms. Napier-Lopez had multiple prior filings. Doc. No. 9. As par for the course, Ms. Napier-Lopez attacked counsel for the Standing Trustee, without support, accusing him of prejudice and profiling. Doc. No. 20. She raised one error made by the Standing Trustee, but the error was immediately remedied and was entirely a non-issue. Doc. No. 21.

As to the remaining schedules that Ms. Napier-Lopez ultimately filed, her disclosures were incomplete, inaccurate, inconsistent, and omitted necessary information, which is remarkable considering the *Order Conditioning Continuation of Case* in the 2022 Case that had listed all the deficiencies to be fixed before considering confirmation in that case. Doc. No. 26. Again, Ms. Napier-Lopez listed the claim held by Capital One on her schedules but failed to provide its address or any information about the claim. Doc. No. 26, p. 27. Once again, and compellingly, is that the Claims Register in her 2023 Case reflects that there are now at least eight other unsecured creditors that Ms. Napier-Lopez never disclosed on her schedules or corrected by any amendments thereto. In addition, Santander Consumer USA, listed in her 2022 Case, was omitted, but it has filed a proof of claim in this case evidencing a claim. *See* Fed. R. Bankr. P. 3001(f).

Lacking in Ms. Napier-Lopez's disclosures, schedules, and related documents is any information about the disposition of assets she owned as late as in her 2022 Case. For example, there is no information about the vehicle she owned in the 2022 Case. Doc. No. 26, pp. 13, 47. In addition, as in her previous cases, Ms. Napier-Lopez did not bother to disclose any of the *necessary* information required on *Schedule I: Your Income* and *Schedule J: Your Expenses*. Doc. No. 26, pp. 37–41. The glaring lack of information about her income throughout her documents prevents a determination of net monthly disposable income necessary for plan confirmation. *See generally* Doc. No. 26. Once again, her plan, Doc. No. 22, only provided for payment to her lessor. It did not provide for any treatment of unsecured claims. Because Schedules I and J were blank and her Statement of Current Monthly Income, Doc. No. 26, pp. 55–57, was incomplete, the plan on its face was patently unconfirmable because Ms. Napier-Lopez provided no identifiable source of income to support plan payments.

When properly challenged by the Standing Trustee about the lack of completeness to the schedules and related documents, Ms. Napier-Lopez cavalierly stated that ***"[r]egarding the schedules, if there are blank lines in the schedules, it is because it is $0 or does not apply."*** Doc. No. 28 (emphasis added). An incredible statement to make when considering, for example, that she failed to provide basic information such as an address, account number, amount due, and other information required for Capital One on Schedule E/F. Despite taking nearly a month to file her schedules, Ms. Napier-Lopez did not even provide the most elementary information, as was her duty as a debtor. More amazingly, Ms. Napier-Lopez then instructed the Standing Trustee to advise her of any discrepancies so that she could amend the schedules. Such a demand is astonishing given that Ms. Napier-Lopez had almost a month to provide complete and accurate information the first time around. Nevertheless, as a courtesy, the court deemed an Order to Show Cause (why

the case should not be dismissed for failure to file all required documents), Doc. No. 6, satisfied because, technically, all missing documents were filed. In recognizing and preserving the issue, the court advised the parties: "Whether those documents contain accurate information and/or are otherwise defective, that must be brought before the court upon separate motion. All parties' rights are reserved in that regard." Doc. No. 28.

And, because Ms. Napier-Lopez filed her 2023 Case within a year of the dismissal of her 2022 case, the automatic stay terminated with respect to her on the 30th day after she filed her current case. 11 U.S.C. § 362(c)(3). Ms. Napier-Lopez moved to extend the automatic stay, Doc. No. 24, but because she did not comply with section 362(c)(3), the court could not grant the relief. Doc. Nos. 37, 38.

Other relevant facts about the 2023 Case: Ms. Napier-Lopez did not list her lessor on Schedule G, which requires the disclosure of unexpired leases, instead checking the box "no." When asked if she had any unexpired leases, she stated on Schedule H that she had no co-debtors despite having acknowledged in her 2022 Case that she had one. The court issued multiple notices due to Ms. Napier-Lopez's failure to pay fees, Doc. Nos. 6, 33, 42, 51. Even though it was her duty to do so, her plan did not provide for any treatment of unsecured claims (even though her modified plan in her 2022 Case did) and on its face, due to the information provided, or lack thereof, it was not feasible. Doc. No. 22, Part V. As in her 2022 Case, in March 2023 the court admonished Ms. Napier-Lopez for ignoring proper procedure and warned her against the use of email as a means to file documents. The court also, as it had in her previous cases, suggested that she retain the assistance of counsel, Doc. No. 36, but she never did. The court adjourned matters from time to time to allow Ms. Napier-Lopez to address the issues in her case. *See* 2023 Case Docket.

The foregoing indisputable facts show that Ms. Napier-Lopez filed the 2023 Case as an emergency petition as a direct result of the lessor eviction action. She accused the lessor of serious misdeeds. No postpetition payments were made to the lessor. She did not comply with her duties as a debtor. She lacked candor as she filed incomplete and inaccurate pleadings and failed to disclose things. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute or correct matters despite given every opportunity to do so.

### v.    The Motion to Dismiss the 2023 Case

The procedural history of the Dismissal Motion is not complicated. As permitted by the court's earlier instruction, *see* Doc. No. 28, in February 2023 the Standing Trustee filed the Dismissal Motion seeking dismissal of the case for not having been filed in good faith and as an abuse of the bankruptcy process, seeking to dismiss and impose a 180-day bar against future filings, Doc. No. 32. Ms. Napier-Lopez filed opposition, Doc. No. 40, and Roberts Mill Apartments filed a certification in response to the Standing Trustee's motion, Doc. No. 45. As the court does not take lightly allegations of bad faith and abuse, it scheduled the Dismissal Motion for a plenary hearing to afford Ms. Napier-Lopez the opportunity to fully address the issues raised.

Due to concerns raised by Ms. Napier-Lopez, the plenary hearing was adjourned twice. The parties timely submitted exhibits, and the plenary hearing took place on April 12, 2023, at which time Ms. Napier-Lopez appeared, testified, and made argument. Counsel for the Standing Trustee and the lessor appeared, questioned Ms. Napier-Lopez, and presented argument. After almost two hours, the plenary hearing concluded.

To support her position that dismissal with a 180-day bar is warranted, the Standing Trustee alleges that Ms. Napier-Lopez has acted in bad faith and has abused the bankruptcy process by having filed multiple bankruptcy petitions, two of which were within the past eight months; has repeatedly failed to file complete and accurate petitions and schedules; has repeatedly failed to pay filing fees; has repeatedly failed to file feasible plans; and has generally failed to provide information necessary for prosecution of her cases. Indeed, the facts set forth above support these statements. Ms. Napier-Lopez of course disputes that she filed her case in bad faith and has abused the bankruptcy process.

In light of her response to, and her preparation for, the Dismissal Motion, the court did not find Ms. Napier-Lopez credible when, in her verbal barrage opening the hearing, she claimed that she did not understand why the court was conducting a plenary hearing in the case. Doc. No. 50. Also, the court suggested many times throughout her cases that she retain counsel—at times she had even stated that she was going to—but no counsel ever appeared for her. She chose to proceed on her own behalf. With that issue out of the way, the plenary hearing moved forward.

Over the nearly two hours of testimony and argument, the court found Ms. Napier-Lopez evasive, belligerent, uncooperative, contradicting, and lacking credibility or sincerity in most of her mistaken and unsupported statements. Often, incredibly, she refused to answer questions at all. Her arguments were unpersuasive. In the end, she gave nothing for the court to work with and left an impression with the court that things were unlikely to change.

For example, when the hearing started Ms. Napier-Lopez claimed that she did not know why she was here, that she was not a bankruptcy expert (even though it was her fourth filing and you do not have to be an expert to fill out the bankruptcy forms), and that she did not want the parties asking her questions during the hearing. Audio of 4/12/23 hearing at 3:00 p.m. Yet, she then explained that for over two days she was on the phone with an attorney from the Department of Justice who was giving her advice on her case and the upcoming hearing. Audio of 4/12/23 hearing at 3:04 p.m. Later on, she confirmed that she had consulted multiple attorneys. *Id.* at 3:33. Clearly, these were inconsistent statements.

Ms. Napier-Lopez also stated that none of her previous filings had anything to do with her lessors, *id.* at 3:09 p.m., yet the indisputable facts show that to be false, as her lessors featured prominently in each of her cases—all filed with pending trials or eviction proceedings.

When asked whether she owned, leased, or financed any vehicles, Ms. Napier-Lopez declined to answer. *Id.* at 3:41 pm. When pressed, she ultimately stated that she did not own a vehicle, *Id.*, but she had one seven months ago when she filed her 2022 Case. And Santander Consumer USA, the secured lender with a lien against the vehicle identified in the 2022 Case, has filed a proof of claim in this case indicating that it still has a secured claim against the vehicle. Yet

Ms. Napier-Lopez's petition and schedules are devoid of any information about the disposition of that asset.

Ms. Napier-Lopez stated that she had amended her list of creditors in all of her previous cases, *id.* at 3:45 p.m., yet the docket in those cases plainly shows that to not be the case. When asked why in this case she did not list her lease on Schedule G, Ms. Napier-Lopez stated that she did not understand the form, *id.* at 3:52 p.m., but she was able to fill out Schedule G in her 2016 Case. She stated that she completed all of her forms in the 2022 Case, *id.* at 3:18 p.m., but that is not true, especially when considering the *Order Conditioning Continuation of Case*, entered in an attempt to keep her 2022 Case alive, that listed items that needed to be completed just to get to a confirmation hearing. Ms. Napier-Lopez was also, incredibly, convinced that her 2022 Case was almost complete and was only dismissed due to failure to pay a $73 installment fee; however a review of the court's docket in the 2022 Case, the plan, and the aforementioned *Order*, among other things, puts that misguided notion to bed. She also stated that in filing the petition in the 2023 Case, she simply grabbed the petition and schedules from the 2022 Case and just used that. *Id.* at 3:13 p.m. This admits that she filed the documents in the 2023 Case with no effort or consideration.

Ms. Napier-Lopez acknowledged that she had a student loan that was not disclosed on her schedules. She also stated that "of course" she had other creditors, but she knew she could amend her schedules like she did in the past. This acknowledgement certainly flies in the face of her statement that she has no bankruptcy experience because it shows a knowledge of the bankruptcy process. More importantly, the court does not find her statement credible inasmuch as the dockets in the past cases reflect that she never amended her schedules to add creditors. Her position that she put forth that she was waiting to see what happened with the Dismissal Motion before doing anything ignores that she did not even initially comply with her duties as a debtor because she failed to file complete and accurate schedules—schedules she had nearly a month to prepare but which she filed without any consideration, according to her testimony.

This all was made clear before the Standing Trustee filed the Dismissal Motion, but Ms. Napier-Lopez chose to provide an incredibly cavalier response: "[r]egarding the schedules, if there are blank lines in the schedules, it is because it is $0 *or does not apply*." Doc. No. 28. This is a very bold statement considering Ms. Napier-Lopez failed to even provide the most basic information on her schedules like addresses, account numbers, or expenses. Her schedules concerning income and expenses, perhaps the most important schedules, contained very little or no information at all. And, despite the Dismissal Motion, Ms. Napier-Lopez chose not to correct the deficiencies but rather repeatedly testified that she "put the brakes on." Thereafter, she ceased complying with any of her duties as a debtor. She failed to cooperate with the Standing Trustee, provide information, or pay her lessor or the filing fees.[10] Her plan was not feasible on its face due to the information, or the lack thereof, provided. Most importantly, she never filed any amendments to provide complete and accurate information about her assets and liabilities, nor did

---

[10] The most recent filing fee was due on 4/25/23 per another Order To Show Cause by the court. Ms. Napier-Lopez did not make the payment. Instead, she advised the court that it was forthcoming so the Order to Show Cause was adjourned until 5/2/23 to allow the payment to be made. No payment was made. On 5/2/23, the court, as a courtesy, advised Ms. Napier-Lopez that it would adjourn the Order to Show Cause until after the court rendered its decision on the Dismissal Motion.

she attempt to introduce any evidence at the plenary hearing regarding the same. The exhibits she produced there were of no import in addressing all the deficiencies.

Throughout the hearing, Ms. Napier-Lopez continued to levy serious but unsubstantiated allegations towards the parties in her case. She blamed the Standing Trustee for her troubles in her previous cases. Audio of 4/12/23 hearing at 3:10 p.m. She accused her lessor of conspiring with the Standing Trustee's office in this case. *Id.* at 4:46 p.m. She actually accused her lessor and the Standing Trustee of "forming a consortium" to prevent her case from going through. *Id.* at 4:50 p.m.

Following the plenary hearing, the court took the matter under advisement. The record is closed, and the matter is now ripe for disposition.

## IV.    DISCUSSION

### A.  Bad Faith Dismissal

By filing for bankruptcy, an individual accesses a safe harbor in which to remain while they reorganize their debts. To remain in bankruptcy, however, a debtor must play by the rules. When they do not, there are ramifications. The Bankruptcy Code provides that a bankruptcy court may, on the request of a party in interest or the United States trustee, and after notice and a hearing, dismiss a case for cause. 11 U.S.C. § 1307(c). Under subsection (c), a debtor's lack of good faith in filing for bankruptcy is, standing alone, sufficient cause for dismissal. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996). "The good faith requirement is the 'policing mechanism' that ensures those who invoke the reorganization processes of Chapter 13 do so only to accomplish the objectives of bankruptcy policy." *In re Parson*, 632 B.R. 613, 625 (Bankr. N.D. Tex. 2021).

While the onus is on the objecting party to move for dismissal, once the objecting party calls into question a petitioner's good faith, the burden shifts to the debtor to prove their good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). As demonstrated, the Standing Trustee, supported by the record, has met her burden by showing that: Ms. Napier-Lopez has filed multiple bankruptcy petitions, two were within the past eight months, usually on the eve of eviction; has repeatedly failed to file complete and accurate petitions and schedules; has repeatedly failed to pay filing fees; has repeatedly failed to file feasible plans; and has generally failed to provide information necessary for prosecution of her cases. The burden then shifted to Ms. Napier-Lopez to overcome the suggestion of a lack of good faith. Having reviewed the record of the 2023 Case, as well as all the other cases filed by her, having heard her testimony, and having the opportunity to assess her credibility first-hand, the court cannot conclude that Ms. Napier-Lopez can overcome a determination of a lack of good faith in the filing of the 2023 Case.

There is no single test or bright-line rule that courts use to determine whether a debtor is acting in good faith. Rather, good faith must be assessed on a case-by-case basis, in light of the totality of the circumstances. *In re Lilley*, 91 F.3d at 496. In assessing a debtor's good faith, relevant factors include, but are not limited to, "the nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and

whether the debtor has been forthcoming with the bankruptcy court and the creditors." *In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014) (citing *In re Lilley*). The court may also consider the history of prior bankruptcy proceedings, including previous petitions. *Id.* But, "the Court does not need to find any fraudulent intent by the debtor in her Chapter 13 filing" when determining a lack of good faith. *In re Parson*, 632 B.R. at 626.

A debtor's history before the court is directly relevant to the court's good faith determination, and courts have consistently recognized that a history of multiple bankruptcy cases, filed without a genuine intent to reorganize, is evidence of bad faith. *In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014); *see also In re Casse*, 198 F.3d 327, 332 (2d Cir. 1999); *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999). In addition, Ms. Napier-Lopez's history of bare-bones filings warrants a determination of a lack of good faith in filing the 2023 Case. *See In re Kearns*, 616 B.R. 458 (Bankr. W.D.N.Y. 2020) (four filings, each dismissed for failure to file most of the required schedules, statements, official forms, or a Chapter 13 Plan); *In re Meltzer*, No. BR 19-21110-PRW, 2020 WL 129441 (Bankr. W.D.N.Y. Jan. 10, 2020) (two bare-bones petitions); *In re Perkins*, No. 19-51202 (JAM), 2020 WL 223910 (Bankr. D. Conn. Jan. 7, 2020) (three bare-bones filings); *In re Craighead*, 377 B.R. 648 (Bankr. N.D. Cal. 2007) (five bare-bones filings). The indisputable facts shows that each and every case filed by Ms. Napier-Lopez followed the same pattern: filed with pending eviction proceedings; inaccurate and incomplete schedules and other related documents; unconfirmable plans; failures to cooperate with the Standing Trustee; failure to pay filing fees; no confirmation hearings; and a swift dismissal. The court easily finds that these factors warrant a finding of a lack of good faith.

Ms. Napier-Lopez's history before the court reveals a pattern of abuse of process that is consistent with her behavior in the current case. In every case, the filings are initiated by an emergency petition. When she does file her schedules, always late, she repeatedly and consistently omits the most basic information, fails to include creditors, does not accurately disclose assets and liabilities, and leaves large swaths of her forms completely blank. Her admission that she just used her 2022 Case information to file this case and her response "[r]egarding the schedules, if there are blank lines in the schedules, it is because it is $0 or does not apply", Doc. No. 28, evidence a condescending, fast and loose approach to her bankruptcy filing. This, coupled with her failure to address her deficiencies, support a determination of a lack of good faith. *See In re Hickman*, 616 B.R. 815, 823 (Bankr. W.D. Okla. 2020) (citing *Grassmann v. Brown (In re Brown)*, 570 B.R. 98, 116 (Bankr. W.D. Okla. 2017)) (failure to amend schedules after becoming aware of their inaccuracies is additional indicia of a debtor's reckless indifference to the truth); *In re Taal*, 520 B.R. 370, 376 (Bankr. D.N.H. 2014) (citing *Marrama v. Citizens Bank (In re Marrama)*, 430 F.3d 474, 478 (1st Cir. 2005) (stating that debtors seeking bankruptcy relief may not "play fast and loose with their assets or with the reality of their affairs."); *In re Letsche*, 234 B.R. 208, 214 (Bankr. D. Mass. 1999) ("Such a cavalier approach to documents that must be filed under the pains and penalties of perjury compels the Court to find that the Debtors neither filed their Chapter 13 case or proposed their Chapter 13 plans in good faith."); *In re Kasal*, 217 B.R. 727, 734 (Bankr. E.D. Pa.), *aff'd sub nom, Casey v. Kasal*, 223 B.R. 879 (E.D. Pa. 1998) ("The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely."). The court easily finds that Ms. Napier-Lopez's cavalier, fast and loose approach to her petition, schedules, and other related documents

in the 2023 Case, and her failure to correct her deficiencies, warrants a finding of a lack of good faith.

An additional relevant factor is the timing of Ms. Napier-Lopez's bankruptcy petition. She disclosed on her schedules that there was on ongoing eviction proceeding, and according to Roberts Mill Apartments, that case was scheduled for trial on January 30th. Ms. Napier-Lopez filed multiple adjournment requests in landlord-tenant court that would have delayed her pending eviction, and when those requests were denied, filed for bankruptcy on the eve of trial. Doc. No. 34. The timing of Ms. Napier-Lopez's bankruptcy petition, filed on the eve of trial, is a relevant factor in determining her lack of good faith. *In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014). Ms. Napier-Lopez failed through her testimony to convince the court that her filing was not done to stop the eviction proceeding. If she truly believed she was not responsible for the debt, as she incredibly claimed, she would not have listed the lessor as a creditor and provided for it in her plan.

Ms. Napier-Lopez has repeatedly filed to thwart the efforts of her lessors. She then accuses them of serious wrongdoings, and makes no postpetition payments. Through the 2023 Case and the prior cases, Ms. Napier-Lopez has created a pattern of utilizing the Bankruptcy Code to throw up roadblocks without any real intention of addressing the claims. Every time she gets in trouble with a lessor, she runs into bankruptcy court—but then does absolutely nothing. How her actions affect her creditors, both before and after the petition is filed, as well as the consistent nature of her debt and the manner in which it arose, are factors that show a lack of good faith in filing the 2023 Case.

Ms. Napier-Lopez's lack of good faith in this case is further evidenced by her woefully deficient schedules that are riddled with inaccuracies, misrepresentations, inconsistencies, and omissions in this case alone. Bankruptcy requires that debtors be honest and forthcoming with the court and with their creditors, and failure to do so is evidence of bad faith. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996). "Accurate and honest disclosure of income is crucial to an evaluation of a debtor's good faith, and a debtor's concealing of a source of income may support a finding of bad faith." *In re Ladieu*, No. 14-10551, 2015 WL 3503941, at *13 (Bankr. D. Vt. June 1, 2015). The court "considers a debtor's duty to file true and complete schedules to be of immense significance when it evaluates whether a debtor has acted in bad faith." *In re Gutierrez*, 528 B.R. 1, 23 (Bankr. D. Vt. 2014). "Dismissal based on lack of good faith . . . is generally utilized . . . in those egregious cases that entail concealed or misrepresented assets and/or sources of income." *Zick*, 931 F.2d at 1129.

By filing a thread-bare petition, filing schedules late and incomplete, and omitting assets and liabilities from her schedules, Ms. Napier-Lopez has not been forthcoming with the court, the Standing Trustee, and her creditors. She has failed to provide the most basic information that would enable the court, the Standing Trustee, and her creditors to determine whether she can effectively reorganize. As noted, her Schedules I and J, which ask debtors to disclose current income and expenses, are almost entirely blank. This alone could warrant dismissal of the 2023 Case, as "a debtor may render Schedules I and J sufficiently unreliable as to warrant a finding of bad faith premised solely on the lack of truthful disclosure." *In re Broder*, 607 B.R. 774, 779 (Bankr. D. Me. 2019) (citing *In re McNichols*, 254 B.R. 422, 431-432 (Bankr. N.D. Ill. 2000)). Without an

analysis of income and expenses, net monthly disposable income cannot be calculated, nor can appropriate Chapter 13 plan payments be determined. Without an analysis of income and expenses, the Standing Trustee cannot determine whether a plan is feasible, nor can she determine whether a debtor even has the ability to reorganize at all. It is the debtor's duty to provide accurate information; it is not the Standing Trustee's or the court's job to ferret it out. Certainly, her indifferent response regarding the blank lines in her schedules does not overcome her burden.

At the plenary hearing on the Dismissal Motion, Ms. Napier-Lopez stated that her schedules were incomplete because she filed her schedules in a rush. The court finds that testimony self-serving, unreliable, and contradicted by the record. Ms. Napier-Lopez had 14 days following her petition to file her schedules, and she took 25 days. She took 25 days, yet still failed to file accurate and complete schedules that require basic and simple information. Moreover, as a multiple, repeat filer (her last case being only 7 months prior), she has experience and should have easily filled the forms out. At the hearing, Ms. Napier-Lopez also contradicted her "rush" defense when she stated that she had filed incomplete schedules because she knew she could amend them later. In addition to being inconsistent testimony, this explanation is wholly unbelievable since she had not amended the schedules despite ample time to do so prior to the plenary hearing, despite the Standing Trustee's motion clearly and explicitly setting forth the deficiencies in her schedules.

Finally, the Bankruptcy Code provides that an individual may not be a debtor under any chapter unless the individual has, within the 180 days preceding the petition date, "received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis." 11 U.S.C. § 109(h). In her previous three cases, Ms. Napier-Lopez filed certificates of credit counseling that showed she had obtained counseling either on the day she filed for bankruptcy or the day before. So, she certainly was aware of the need to obtain the counseling prior to filing. In her present case, however, she filed the Certificate of Credit Counseling that she had filed in her 2022 Case, dated June 24, 2022. She indicated on her petition, under penalty of perjury, that she had obtained credit counseling within 180 days prior to her petition. This was false, or at minimum, another careless disregard of her duty as a debtor, as the 180-day period expired prior to filing her 2023 Case. A failure to obtain prepetition credit counseling establishes further cause for dismissing the 2023 Case, as courts have found that it constitutes cause under § 1307(c) as indicative of bad faith. *In re Meltzer*, No. BR 19-21110-PRW, 2020 WL 129441, at *3 (Bankr. W.D.N.Y. Jan. 10, 2020).[11] "Where the debtor fails to comply with § 109(h) by obtaining prepetition credit counseling and fails to meet the requirements for [an] exemption or an extension of time, cause will exist for dismissal of the case." *In re McBride*, 354 B.R. 95, 100 (Bankr. D.S.C. 2006); *see In re Seaman*, 340 B.R. 698, 708 (Bankr. E.D.N.Y. 2006) ("The petitioner's ineligibility to be a debtor is also cause to dismiss a bankruptcy case under Sections 707(a), 1307(c), or 1112(b)."). Bankruptcy courts in this circuit have recognized as much. *In re Tomco*, 339 B.R. 145, 158–61 (Bankr. W.D. Pa. 2006).

---

[11] The court did not push this issue at the Dismissal Motion hearing as it preferred to decide the entire case on its merits rather than dismiss yet another case due to another procedural default by Ms. Napier-Lopez. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

In light of the totality of the circumstances, *Lilley*, 91 F.3d 496, the court is compelled to find that Ms. Napier-Lopez did not file her 2023 Case with the requisite good faith. The 2023 Case, which nearly repeats the abuses of her first three cases, confirms that Ms. Napier-Lopez is not the honest but unfortunate debtor entitled to the protections of the Bankruptcy Code, and lacks the necessary prerequisites of good faith and candor. *Campbell*, 634 B.R. 647, 653 (*citing Zick*, 931 F.2d 1124, 1129–30). The indisputable facts of the 2023 Case, which are nearly identical to her previous three cases, unquestionably show that the case was filed as an emergency petition as a direct result of the lessor eviction action. Without support, she accused the lessor of serious misdeeds. She did not make postpetition payments to the lessor. As in the past, proper procedures were not followed: deadlines were not met and filing fees were not paid. She did not comply with her duties required by the Bankruptcy Code and Rules. She did not cooperate with the Standing Trustee. Her schedules and other required documents were completely devoid of basic (and truly the most basic) information. Based upon the lack of pertinent information, her plan was once again not feasible. Her explanation that, "if there are blank lines in the schedules, it is because it is $0 or *does not apply*", Doc. No. 28, is completely unacceptable and directly contradicts her duty as a debtor. Rather than correcting the deficiencies, she decided "to put the brakes on" and not do anything. When given the opportunity to address the issues raised in the Dismissal Motion, she refused to provide answers or was evasive and conflicting in her responses, and sought to argue every point. Astonishingly, she attacked the Standing Trustee and lessor, asserting a conspiracy. She simply chose to argue rather than to fix. In the end, nothing she said, did, or produced excused her from her obligation to comply with the most basic duty of providing simple, complete, and accurate information about her assets and liabilities so that her case could move forward. Clearly, the primary purpose of the 2023 Case was to frustrate the efforts of her lessor to exercise its remedies under her lease, thus filing without a good faith intent to reorganize. This case is exactly the type of filing that Congress tried to prevent. Bankruptcy courts must guard against these filings as they are abusive and interfere with the bankruptcy process and intent and purpose of the Bankruptcy Code.

**B.  180-day Bar**

The final issue before the court is the Standing Trustee's request to impose a 180-day bar on future bankruptcy filings. This is well within the court's discretion. Bankruptcy courts have general, statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); s*ee also In re Ross*, 858 F.3d 779, 783 (3d Cir. 2017). "The basic purpose of section 105 is to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction. . . . Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief." *In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999) (citation omitted); s*ee also In re Continental Airlines*, 203 F.3d 203, 208 (3d Cir. 2000) ("Section 105(a) authorizes courts to take actions 'necessary or appropriate' to carry out the provisions of Title 11 of the United States Code.") (internal quotation omitted). Furthermore, bankruptcy courts also have the inherent power to sanction abusive litigation practices. *Law v. Siegel*, 571 U.S. 415, 420 (2014); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375–376 (2007). The ability to sanction bad faith debtors is also inherent in section 349(a) of the Bankruptcy Code, which provides that "[u]nless the court,

for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title[.]" 11 U.S.C. § 349(a); *see also In re Thompson*, 557 B.R. 856, 857 (Bankr. W.D. Pa. 2016); *In re Jacono*, 360 B.R. 84, 89 (Bankr. E.D. Pa. 2006); *In re Madison*, 184 B.R. 686, 694 (Bankr. E.D. Pa. 1995). What is more, "[i]f 'cause' exists, bankruptcy courts have discretion to dismiss with prejudice and bar the filing of subsequent bankruptcies." *In re Jordan*, 598 B.R. 396, 408 (Bankr. E.D. La. 2019) (five year bar for future filings due to Chapter 13 debtor's lack of good faith); *In re Marshall*, 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009) (In deciding a motion to dismiss on bad faith, the bankruptcy court dismissed with a one year bar and the appellate court finding that "Bankruptcy courts 'invariably derive from § 105(a) or § 349(a) of the Code ... the power to sanction bad-faith serial filers ... by prohibiting further bankruptcy filings for [over] 180 days.'"); and *In re Barttels*, No. 10-16231-A-13, 2011 WL 10653860, at *2 (Bankr. E.D. Cal. Jan. 28, 2011):

> The case of a debtor who frequently files bankruptcy petitions may be dismissed with a bar on future filings. *See e.g., In re Armwood,* 175 B.R. 779 (Bankr.N.D.Ga.1994) (Debtor's fifth chapter 13 petition dismissed with prejudice with 180 day bar on filing); *In re Gros,* 173 B.R. 774 (Bankr.M.D.Fla.1994) (Debtor's fifth bankruptcy filing in 25 months dismissed with prejudice with bar on future filing without leave of court); *In re Standfield,* 152 B.R. 528, (Bankr.N.D.Ill.1993) (one of Debtor's two simultaneously pending cases dismissed with prejudice with 180 day bar on filing); *In re Stathatos,* 163 B.R. 83 (N.D.Tex.1993) (Debtor's fourth bankruptcy case dismissed with prejudice with two year bar on filing); *In re Earl,* 140 B.R. 728 (Bankr.N.D.Ind.1992) (Debtor's fourth chapter 13 case dismissed with 180 day bar on future filing under § 105)[.]

*Barttels*, 2011 WL 10653860, at *2.

In this case, a 180-day bar was requested. The facts of this case and the reasoning in the cases cited above certainly support imposing a longer bar and indeed, this court has imposed longer bars for other debtors. But since this case, and every other one of her cases, appear to be about thwarting the efforts of Ms. Napier-Lopez's lessor, a 180-day bar makes sense. Here's why: 1) 180 days will allow the lessor to complete its eviction proceedings without further interference or delay; 2) there are no other issues currently pressing that require immediate bankruptcy relief, as other than the lessor's, there are no other lawsuits, repossession threats, garnishments, foreclosures or levies in place. Doc. No. 26. P. 47; 3) any immediate refiling would not benefit Ms. Napier-Lopez as the automatic stay would not go into effect in a new case with her having two cases dismissed within the previous year. 11 U.S.C. § 362(c)(4)(A)(i); 4) this is a reasonable period of time that will allow Ms. Napier-Lopez to organize information for a proper prosecution of a bankruptcy case if she chooses – and if she does, she should take this opinion seriously; and 5) her abusive filing warrants a sanction of some kind. Of course, should the abuse persist, the court will impose a much longer bar in the future.

## V. CONCLUSION

After the plenary hearing, the court regrettably walked away with the distinct impression that Ms. Napier-Lopez believes she can pick and choose how her Chapter 13 case is going to run, and it is going to run on her own terms without regard for what is required by the Bankruptcy Code and Rules. She has no regard for her duties and responsibilities as a debtor. It is clear that she chooses to be evasive and will address only what she wants to address. Often times she provides contradictory statements. She believes anyone who challenges her is part of some conspiracy against her. Furthermore, her misguided notions about the status of her previous cases give the court no confidence that she would comply with any further direction or provide complete, accurate and truthful information required in the bankruptcy documents in this case. Because of this and the reasons set forth above, she is far from the honest but unfortunate debtor who deserves the extraordinary relief of bankruptcy protection. Therefore, dismissal of the case, with a 180-day bar, is appropriate.

Accordingly, the court grants the Standing Trustee's motion to dismiss Ms. Napier-Lopez's case. The Standing Trustee's request to impose a 180-day bar to re-filing is also granted.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: May 4, 2023